[No. A028062. First Dist., Div. Four. Apr. 29, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
PEDRO MATA GUIZAR, Defendant and Appellant.

COUNSEL

Arturo Hernandez for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Ronald E. Niver, Dane R. Gillette and Christopher J. Wei, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

CHANNELL, J.—A jury convicted appellant Pedro Mata Guizar of first degree murder (Pen. Code, § 187);[1] it also found that he had used a firearm (§ 12022.5) and inflicted great bodily injury (§ 1203.075) in the commission of this offense. The trial court sentenced Guizar to a term of 27 years to life in state prison. He appeals, contending that his conviction is the result of ineffective assistance of counsel. We reverse the conviction because the

---

[1]All statutory references are to the Penal Code, unless otherwise indicated.

jury heard highly prejudicial, inadmissible evidence of Guizar's alleged criminal history.

## I. FACTS

At approximately 9:30 p.m. on the evening of October 19-20, 1983, victim Pedro Aguilar went with his nephew Juan Cerda Virueta to Danny's Tavern in East Palo Alto. Aguilar was already "tipsy," but he ordered more drinks at the bar. Neither Virueta nor Aguilar knew appellant Pedro Mata Guizar, who was at the bar when they arrived. Guizar also consumed much alcohol that night.

Aguilar, Virueta, and Guizar all gambled on a dice game at some point in the evening. Aguilar began losing and accused another player, Leonel Zaragoza, of cheating. The two exchanged words, then began exchanging blows. Defense witnesses testified that Aguilar grabbed Zaragoza by the hair and hit his head against a table. Zaragoza's friend, Guizar, witnessed this fight. He testified that he was afraid of Aguilar as a result of this incident, asserting that Aguilar appeared to be agile and later threatened him.

After he and other bar patrons separated Aguilar and Zaragoza, Guizar had his girlfriend, Rosa Bazan Martinez, bring a gun from his house to the bar, assertedly for his protection. He concealed the weapon and continued to play dice.

After approximately 30 minutes, the bar patrons were again playing dice, with Virueta and Guizar betting against each other. Aguilar encouraged his nephew within Guizar's earshot. Virueta and the bartender told Aguilar to be quiet; Guizar did not say anything to him about this. Eyewitness testimony varies at this point: Virueta testified that Guizar got up, moved away from the bar, and pulled his gun; Guizar testified that Aguilar threatened him and advanced on him before he pulled out his gun. Guizar testified that he told Aguilar to stop; both sides agree that he told Aguilar that he was going to kill him. Aguilar responded, "Kill me." Defense witnesses claimed that Aguilar told Guizar, "Kill me, because if you don't kill me, I am going to kill you."

Guizar testified that he did not want to kill Aguilar, and that he thought the other man would back down when he saw the gun. When Aguilar assumed a boxing stance, Guizar got scared and thought "If I don't shoot him, he's going to take the pistol from me and he is going to kill me." Guizar shot Aguilar four times, first in the abdomen and later in the head. Aguilar was pronounced dead at 1:16 a.m. on October 20. The coroner later identified

the cause of death as multiple gunshot wounds, especially the head wound. Aguilar's blood alcohol level was estimated at .27 percent.

After the shooting, Guizar fled with the gun, driving around aimlessly. Soon, a police officer stopped his vehicle and eventually arrested him for drunk driving. Guizar's blood alcohol level tested at .16 percent; it was estimated to have been .18 percent at the time of the shooting. Police found a gun during a subsequent search of the car; it had four empty chambers and had recently been fired. Guizar testified that he did not think to dispose of the gun. Later, police began to suspect that he was involved in the Aguilar shooting. When interrogated, Guizar lied to police, not admitting where he had been that night or that he knew of the existence of the gun.

Virueta did not report the shooting to police. When questioned by police soon after the shooting, he told them that he did not see the incident. He explained later that he did not want to get into trouble with the police: he was a minor who had been drinking, and also an illegal alien. He also indicated that he feared Guizar. Five days after the shooting, police were tipped that Virueta in fact knew about the crime, and he agreed to giving a tape recorded statement. The tape, partly in Spanish, and a transcription of it, were introduced into evidence without objection. The transcript included the statement, purportedly interpreting Virueta's answers, that he had heard someone say Guizar had "committed some murders before." No evidence of Guizar's criminal history was offered at trial. The judge instructed the jury not to consider this part of Virueta's statement for the truth of the matter asserted, but only to establish his state of mind at the time he described the crime to police several days after the shooting.[2]

Guizar admitted killing Aguilar; the only issue at trial was his degree of responsibility for the crime. The key witnesses were the victim's nephew on one side and the defendant and two of his friends on the other. The prosecutor acknowledged that the credibility of these witnesses was a central issue in the case and that Virueta was not an "outstanding" witness. During closing argument, the prosecutor mentioned that Virueta believed that Guizar had committed "other murders," suggesting that the jury should infer that this was one reason why he did not immediately report the shooting. The jury found Guizar guilty of first degree murder; it also found that he had used a firearm and inflicted great bodily injury in the commission of the

---

[2]The judge gave this limiting instruction to the jury: "There is reference in the tape recorded statement of Juan Cerda [Virueta] to the possibility that the Defendant may have previously committed other murders. I instruct you that you shall not in any way consider this as evidence that the Defendant in fact committed or may have committed other murders. Such evidence may be considered by you, if at all, only insofar as it may relate to the state of mind of Juan Cerda [Virueta] at the time he made the statement."

crime. Sentenced to 27 years to life in state prison, Guizar filed a timely appeal.

## II. DISCUSSION

Guizar contends that his trial counsel was incompetent because: (1) he brought out Rosa Bazan Martinez's testimony that Guizar asked her to bring him the murder weapon, thus forcing him to testify about his possession of the gun; and (2) he failed to discover a key mistranslation of the tape—that Virueta did not actually state that Guizar had allegedly committed other murders. ■ However, our analysis of the record reveals a more basic error than those Guizar alleges.

The trial court admitted into evidence Virueta's taped statement and an 18-page transcript that purports to be an accurate translation to assist the jury in determining Virueta's state of mind at the time he made the statement. (See fn. 2, *ante.*) In closing argument, the prosecutor said: "There is a sledge hammer waiting for you in the jury room [in the] transcript of [Virueta's] statement . . . ." Later, he repeated the statement about Guizar having committed "some murders before" and explained the court's confusing limiting instruction. The prosecutor correctly noted that "[t]here is not a shred of evidence" that Guizar committed other murders. At no time did defense counsel request that the tape and transcript be edited to eliminate the reference to other murders, nor did the trial court or prosecutor suggest this possibility.

Even if we assume that the transcript is an accurate translation of Virueta's statement, the reference to Guizar's alleged prior murders should have been excluded. For example, in *People* v. *Hines* (1964) 61 Cal.2d 164 [37 Cal.Rptr. 622, 390 P.2d 398] (disapproved on another point in *People* v. *Murtishaw* (1981) 29 Cal.3d 733, 774-775, fn. 40 [175 Cal.Rptr. 738, 631 P.2d 446], cert. den., 455 U.S. 922 [71 L.Ed.2d 464, 102 S.Ct. 1280]), the trial court erroneously allowed the jury to hear taped recordings of a defendant's confession without erasing or otherwise deleting the portions of the tape in which the defendant himself mentioned other criminal offenses. The Supreme Court held that these extrajudicial admissions of prior offenses should not have been admitted in the absence of corroborating evidence that such crimes were actually committed. (*Id.*, at pp. 174-175.)

Guizar's appeal is analogous to *Hines.* In both cases, a statement was introduced in full against an accused murderer. The statement was not edited to delete references to unproved serious offenses that had little, if any, relevance to the issues presented (see Evid. Code, § 210), and that plainly

could have had a prejudicial effect on the jury's consideration of the degree of responsibility for Aguilar's death (see Evid. Code, § 352).

We need not and do not decide whether it was proper for the jury to hear some portion of the tape, with an accurate translation to assist them, to rehabilitate Virueta's testimony after an attack on his credibility. However, if the jury properly heard any part of the tape at all, it was counsel's responsibility to edit out at least the portion of the tape and transcript referring to other murders. Ignoring other possible objections, it is inconceivable to us that defense counsel did not object to the introduction of this portion of the tape and transcript on the ground that it was more prejudicial than probative. (See Evid. Code, § 352; see also *People* v. *Hamilton* (1961) 55 Cal.2d 881, 893-894 [13 Cal.Rptr. 649, 362 P.2d 473], cert. den., 389 U.S. 921 [19 L.Ed.2d 271, 88 S.Ct. 243], overruled on another point in *People* v. *Wilson* (1969) 1 Cal.3d 431, 442 [82 Cal.Rptr. 494, 462 P.2d 22] [state of mind evidence relating solely to alleged past conduct of accused should be excluded when benefit to prosecution is far outweighed by prejudicial effect on accused].)[3] The admission of this portion of the tape and transcript evidence was plainly error.

We find the Attorney General's suggestion that admission of this evidence "could not have altered the verdict" to be less than persuasive. The level of alcohol consumed by the parties, the fact that Guizar witnessed Aguilar's earlier fight with Zaragoza, Guizar's testimony that he feared the victim, and Virueta's five-day delay in explaining his version of the shooting make it reasonably probable that a jury whose deliberations were not tainted by speculation about whether Guizar had, in fact, committed prior murders, could have found Guizar guilty of less than first degree murder. (*People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243], cert. den., 355 U.S. 846 [2 L.Ed.2d 55, 78 S.Ct. 70]; see Cal. Const., art. VI, § 13.)

The judgment is reversed and the cause is remanded.[4]

Poché, Acting P. J., and Sabraw, J., concurred.

A petition for a rehearing was denied May 12, 1986, and respondent's petition for review by the Supreme Court was denied August 14, 1986.

---

[3]At oral argument, the Attorney General argued that we should assume from the record on appeal that the admission of the tape and the transcript was a conscious, tactical decision on the part of Guizar's trial counsel. It is inconceivable to us that a defense attorney would make a tactical decision to admit evidence that a defendant, on trial for murder, had committed other murders in the past. We can imagine no sound tactical reason why trial counsel would have done this, and the record does not support an assumption that admission of the evidence was a tactical decision.

[4]In light of this reversal, we need not consider the other issues raised on appeal.