**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Rickey BRADLEY, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Edward L. POWELL, Defendant–Appellant.**

**Nos. 92–10366, 92–10367.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 14, 1993.

Decided Sept. 28, 1993.

Judd C. Iversen and Linda M. Leavitt, San Francisco, CA, for defendant Bradley.

Richard B. Mazer, San Francisco, CA, for defendant Powell.

George L. Bevan, Jr., Asst. U.S. Atty., San Francisco, CA, for plaintiff-appellee.

Before: LAY,* Senior Circuit Judge, HUG and SCHROEDER, Circuit Judges.

LAY, Senior Circuit Judge:

Rickey Bradley and Edward L. Powell challenge their convictions for conspiring and attempting to kill a witness scheduled to testify against one of their associates in a federal criminal trial. At the conclusion of a joint trial, each defendant was convicted of conspiracy to kill a witness to prevent testimony in an official proceeding in violation of 18 U.S.C. § 371, attempt to kill a witness to prevent testimony in an official proceeding in violation of 18 U.S.C. §§ 1512, 1515, and use of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c). We have consolidated the defendants' separate appeals for purposes of this opinion.

On appeal the defendants urge that the district court abused its discretion under Federal Rule of Evidence 404(b) in admitting evidence of a separate homicide for which the government contends the defendants were responsible. Upon plenary review we find prejudicial error in the use of such evidence. We reverse and remand to the district court for a new trial.[1]

---

* Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

1. In their separate appeals, Bradley and Powell contest numerous additional rulings from the district court. Because of our disposition of the

The government charged Bradley and Powell with hiring a third man, Curtis Young, to kill Michael Williams in September 1990. Williams was to be a witness in the federal drug, income tax, and money laundering trial of Richard Beasley, a business associate of Bradley's. Bradley owned a cleaning service and had a contract to clean a delicatessen owned by Beasley. Williams was an employee at the deli and had purchased the business from Beasley but, unable to make payments, he forfeited the business. The government claimed that Williams had information of financial maneuvering at the deli relevant to the charges against Beasley.

According to the government's evidence at Bradley and Powell's trial, the two defendants paid Young $10,000 in two installments to carry out the Williams slaying. They also gave him a handgun for use in the killing. Young testified that Bradley and Powell told him that they planned six homicides, and that Williams's was to be the first. Young was to be involved in five of the six. Rather than carry out the murder, however, Young claimed he sold the gun. He collected the second installment payment after informing Bradley and Powell that he had, in fact, killed Williams. But Williams was never killed. He was a witness at Bradley and Powell's trial. Moreover, he never was asked to testify at the Beasley trial, the criminal proceeding that allegedly caused the defendants here to plot his death. Beasley pled guilty to the financial charges against him—the charges for which Williams's testimony was most relevant.

The alleged plot to kill Williams came to light four months after the fact in January 1991 when Young was arrested in a drug buy-bust operation in San Francisco. Young told police of the plot and was enrolled in the Federal Witness Protection Program. Earlier on the date of his arrest, Young had been in a fist fight with Bradley. He testified that Bradley assaulted him for failing to kill Williams.

Over the repeated objections of both defendants, the government at trial introduced evidence of a second, uncharged murder plot allegedly involving Bradley and Powell. Unlike in the alleged conspiracy to kill Williams, this time a homicide actually occurred, although, according to the government, the wrong man was killed. The government introduced evidence of this slaying primarily through Sonia Cruz Powell, Powell's girlfriend and later wife, and Eric Bell, cousin of the murder victim. The government contended that Beasley wanted Eric Bell killed in October 1990 because four years earlier the two had had a dispute over a woman. Eric Bell and the victim, Alejo Bell, resemble one another, and the government contended the killer shot Alejo Bell by mistake. Sonia Powell testified her husband told her that he had tried to hire someone to kill Bell, but when the arrangements did not work out he carried out the killing himself.[2] No eyewitnesses could positively identify either defendant as having been at the scene.[3]

Bradley and Powell argue they were unfairly prejudiced by the introduction of evidence concerning the uncharged Bell homicide. The trial court admitted this evidence under Federal Rule of Evidence 404(b), which makes evidence of other crimes or bad acts admissible only when offered for purposes other than "to prove the character of a person in order to show action in conformity therewith." Fed.R.Evid. 404(b); *United States v. Ayers*, 924 F.2d 1468, 1472–73 (9th Cir.1991) (stating evidence of other crimes is admissible "except where it tends to prove *only* criminal disposition"). Under

case, we need not and do not address most of these contentions.

**2.** Bradley asserts on appeal that Sonia Cruz Powell's testimony violated his rights under the Confrontation Clause of the Constitution. He moved for severance under Federal Rule of Criminal Procedure 14. In view of our reversal, we need not pass on Bradley's claim of misjoinder.

**3.** One witness, Cedric Green, testified he observed a van at the scene that Bradley and Powell had used. However, while the jury was deliberating, Green admitted perjuring his testimony. He could not have witnessed the homicide because he was in prison at the time. Our resolution of the case makes it unnecessary for us to consider the defendants' arguments regarding this perjury.

Rule 404(b), we use the following four-part test:

> (1) sufficient evidence must exist for the jury to find that the defendant committed the other acts; (2) the other acts must be introduced to prove a material issue in the case; (3) the other acts must not be too remote in time; and (4) if admitted to prove intent, the other charged acts must be similar to the offense charged.

*Id.* at 1473. We also apply Federal Rule of Evidence 403 to other crimes evidence. *Id.* at 1474; *see also Huddleston v. United States*, 485 U.S. 681, 688, 108 S.Ct. 1496, 1500, 99 L.Ed.2d. 771 (1988) (agreeing with the Advisory Committee's conclusion that the decision to admit evidence under Rule 404(b) depends on "whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403"). Thus, in *United States v. Hodges*, 770 F.2d 1475 (9th Cir.1985), we held the district court committed reversible error "[b]ecause we are of the firm conviction that the testimony relating to Hodges' [uncharged] extortion attempt is both of slight probative value and highly and unfairly prejudicial." *Id.* at 1480.

We have "emphasized that extrinsic acts evidence 'is not looked upon with favor.'" *Id.* at 1479 (quoting *United States v. Herrera–Medina*, 609 F.2d 376, 379 (9th Cir. 1979)). We have stated that "[o]ur reluctance to sanction the use of evidence of other crimes stems from the underlying premise of our criminal justice system, that the defendant must be tried for what he did, not for who he is." *Id.* Thus, "guilt or innocence of the accused must be established by evidence relevant to the particular offense being tried, not by showing that the defendant has engaged in other acts of wrongdoing." *Id.*

The district court concluded that the "proposed evidence here [concerning the Bell homicide] is prejudicial." However, the trial judge also concluded that it was "highly pro-bative of the relationship of the parties involved in the conspiracy." On that basis the district court admitted the evidence over the defendants' objections. At the conclusion of the trial, the district court also gave a limiting instruction on this evidence, telling jurors that testimony regarding the Bell murder "was admitted for the limited purpose of showing defendants' plan, motive, and alleged corroboration as other evidence in this case relating to Williams. You may not consider this evidence for any other purpose."

Our review of the record leads us to conclude that the trial judge abused his discretion in admitting the evidence of the second homicide. The evidence concerning the Bell slaying was quite vague. Contrary to the trial judge's ruling, it sheds very little probative value on the relationship of the parties. Especially as Bradley is concerned, there was almost no evidence connecting him with the slaying. As the Supreme Court said in *Huddleston*, the prosecution may not "parade past the jury a litany of potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo." 485 U.S. at 689, 108 S.Ct. at 1501.

The prosecution argues the Bell homicide is relevant because Bradley and Powell conspired to carry out this murder on behalf of Beasley, just as they did in planning to kill Williams. However, the link between Beasley and the Bell homicide, key to this appeal, is extremely weak. The evidence connecting Beasley to this killing rests only on Sonia Powell's second-hand statement that Powell told her the murder was carried out at Beasley's request to prevent a witness from testifying against him.[4] Despite Sonia Powell's testimony to the contrary, there was no evidence introduced that either Alejo or Eric Bell was to be a witness at Beasley's trial. Instead, the prosecution argues to this court that Eric Bell's involvement with Beasley's girlfriend four years before provided a motive for this slaying. Not only is this motive

---

4. The prosecution makes much of the fact that at various times the defendants possessed cash that smelled musty, as if it had been buried. There was also evidence that Beasley had buried large amounts of cash for safekeeping. The evidence of buried cash, however, does not reveal a murder plot.

dissimilar from that in the charged offense,[5] there was scant evidence to support this theory. The prosecution presented no evidence that Beasley still harbored any animus toward Eric Bell. Because there was no supporting evidence presented, the contention that, recalling altercations with Bell from 1985 and 1986, Beasley arranged to have him killed in 1990 does not rise above the concept of "unsubstantiated innuendo." Indeed, the only evidence that Eric Bell was the intended victim was Eric Bell's statement that he and Alejo Bell resembled each other. Because the evidence implicating Beasley in the homicide is so weak, testimony regarding the Bell slaying did little to advance jurors' knowledge of the crucial relationship between the defendants and Beasley.

The government chose to indict Bradley and Powell only for the attempt on Williams's life. Unlike other cases we have considered, the Bell homicide evidence does not illuminate the "background and development of the conspiracy," *United States v. McKoy,* 771 F.2d 1207, 1214 (9th Cir.1985), because it occurred after the conspiracy that is the subject of the indictment here ended and because the similarities between the two planned slayings are too few to have any significant probative value. The evidence similarly does little to illuminate motive. "The prior wrongful acts must establish a motive to commit the crime charged, not simply a propensity to engage in criminal activity." *United States v. Brown,* 880 F.2d 1012, 1015 (9th Cir.1989). Because the Bell homicide occurred after Young was to have killed Williams, it provided no motive for the attempt on Williams's life. The fact that the prosecution alleges that the motivation for both murder plots was the same adds little probative weight. Financial motive is a common incentive for crime. The motive evidence was relevant only to show the defendants' propensity for violent crime, which, of course, is an improper purpose under Rule 404(b). *Id.*

At the same time that we conclude the evidence of the Bell homicide is, at best, of dubious value, we have little doubt that it is highly and unfairly prejudicial. Rule 404(b) "is designed to avoid a danger that the jury will punish the defendant for offenses other than those charged, or at least that it will convict when unsure of guilt, because it is convinced that the defendant is a bad man deserving of punishment." *United States v. Hill,* 953 F.2d 452, 457 (9th Cir.1991) (quoting *Brown,* 880 F.2d at 1014). This danger is particularly great when "the extrinsic activity was not the subject of a conviction; the jury may feel that the defendant should be punished for that activity even if he is not guilty of the offense charged." *United States v. Anderson,* 933 F.2d 1261, 1272 (5th Cir.1991) (quoting *United States v. Beechum,* 582 F.2d 898, 914 (5th Cir.1978) (en banc), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979)).

Nothing could be more unfairly prejudicial than the suggestive innuendos in this trial that Bradley and Powell were incompetent hired guns who could not even kill the right person. The charged homicide was never carried out, but the uncharged homicide—for which no one has been punished—was successfully executed in cold blood. In his rebuttal argument, the prosecutor appears even to argue that Bradley and Powell should be punished because they are dangerous bunglers. The prosecutor argued, "They blew the job on Mike Williams. Mike Williams was not killed. They blew the job on Alejo Bell because they killed the wrong guy." We have warned repeatedly of "the type of evidence that makes 'conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged.'" *United States v. Hodges,* 770 F.2d 1475, 1480 (9th Cir.1985) (quoting *United States v. Bailleaux,* 685 F.2d 1105, 1111 (9th Cir.1982)). There is tremendous risk

---

**5.** The prosecution made an offer of proof that it would show that the defendants offered to pay another individual, Gregory McDowell, to carry out the Bell homicide. However, prosecutors did not call McDowell as a witness, and thus never developed this evidence. We cannot now evaluate the prosecution's suggestion that McDowell may have declined to testify because he received a threat. There is no record of the government attempting to compel his testimony.

here that the jury decided that Bradley and Powell should not go unpunished because of their propensity for violence.[6] Given the negligible legitimate value of the Bell homicide evidence, our finding of its highly prejudicial nature gives us no choice but to conclude that the trial judge abused his discretion in admitting the evidence.

 Having concluded that it was error for the district court to have admitted the evidence of the Bell homicide, we reverse only if the error was not harmless. *See United States v. Brown*, 880 F.2d 1012, 1016 (9th Cir.1989); *see also* Fed.R.Crim.P. 52(a). Errors such as this one are harmless if it is more probable than not that the erroneously admitted evidence did not affect the verdict. *Brown*, 880 F.2d at 1016. We have little trouble concluding that the Bell murder evidence was not harmless. In *United States v. Hill*, 953 F.2d 452, 458 (9th Cir.1991), we remanded for a new trial in a case when the prejudicial other acts testimony consisted of only a brief mention. Despite its minuscule probative value here, the Bell homicide became the focus of latter stages of the trial including, as discussed, the prosecution's final argument. *See Brown*, 880 F.2d at 1016 ("[T]he continued references to Brown's prior bad acts at the Government's closing arguments make it impossible for us to say it is more likely than not that they did not affect the jury's verdict."). Although the trial judge provided jurors with a limiting instruction here, it came at the end of the trial, long after the testimony was first admitted, and was general in nature. The instruction allowed jurors to consider the evidence for several propositions, including to show the defendants' motive. As we have said, the only relevance of this evidence as to motive was for the impermissible purpose of showing propensity for violent crime. An insufficient limiting instruction will not save otherwise prejudicial testimony. *Hill*, 953 F.2d at 458. Furthermore, as the Second Circuit

said in a case involving a series of arson fires, "No matter what limiting instruction might be given, the evidence presented a high risk that the jury might nevertheless improperly infer from the occurrence of several fires that the defendant probably set the one alleged in the indictment." *United States v. Neary*, 733 F.2d 210, 217 (2d Cir. 1984). The Bell homicide evidence is similar in nature. Therefore, we reverse.[7]

For the above reasons, the judgments of conviction on all three counts are vacated and the case is remanded to the district court for a new trial.

---

**6.** Indeed, the prosecutor argued as much, telling jurors that the "Alejo Bell–Eric Bell homicide is relevant because it shows that Edward Powell *was willing* to do the same thing with respect to the man on Third Street [Bell] as he was being hired to do with Mike Williams." (Emphasis added).

**7.** Because we remand the convictions for conspiracy and attempted murder, we must also do so for the 18 U.S.C. § 924(c) charge of using a firearm in relation to a crime of violence.