**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARK MANCEBO,
       *Petitioner-Appellant,*

    v.

DERRAL G. ADAMS; ATTORNEY
GENERAL OF THE STATE OF
CALIFORNIA; E. MEYERS,
       *Respondents-Appellees.*

No. 04-17167

D.C. No.
CV-01-05600-JKS

OPINION

Appeal from the United States District Court
for the Eastern District of California
James K. Singleton, Chief Judge, Presiding

Argued and Submitted
October 19, 2005—San Francisco, California

Filed January 12, 2006

Before: Dorothy W. Nelson, Johnnie B. Rawlinson, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge D.W. Nelson

**COUNSEL**

Carrie Leonetti, Federal Public Defender's Office, Fresno, California, for defendant-appellant Mark Mancebo.

Brian Alvarez, Office of the California Attorney General, Fresno, California, for the respondents-appellees.

**OPINION**

D.W. NELSON, Senior Circuit Judge:

Mark C. Mancebo brings this petition to challenge the denial by the federal district court of his petition for a writ of habeas corpus. Mancebo is currently serving an indeterminate term sentence of fifteen years to life for his conviction for second-degree murder, with an additional eight years stayed on his conviction for kidnaping. Mancebo argues that he was denied his constitutionally guaranteed right to effective assistance of counsel when, at his original trial, his counsel neither objected to nor moved to exclude a portion of a recorded conversation with police regarding his decision not to take a polygraph examination. Mancebo also argues that the district court

did not commit error in holding an evidentiary hearing to examine his ineffective assistance of counsel claim.

We have jurisdiction pursuant to 28 U.S.C. § 2253. This court reviews a district court's denial of a writ of habeas corpus de novo. *Leavitt v. Arave*, 383 F.3d 809, 815 (9th Cir. 2004). Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we can only overturn Mancebo's conviction if the state court decision affirming his conviction was "an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). AEDPA creates a high burden for a petitioner like Mancebo, which we find he has failed to meet.

In determining whether Mancebo has received effective assistance of counsel, the "clearly established federal law, as determined by the Supreme Court of the United States" in this case is the test derived from *Strickland v. Washington*, 466 U.S. 668 (1984). *See Dows v. Wood*, 211 F.3d 480, 484 (9th Cir. 2000). In *Strickland*, the Supreme Court decided that for an ineffective assistance of counsel claim to succeed, a party must demonstrate that the performance of his or her attorney "fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

**[1]** It is an issue of first impression in this circuit whether the failure to prevent the introduction of improper polygraph evidence can serve as grounds for reversing a conviction pursuant to AEDPA. We hold that when the polygraph evidence played a very small role in the trial, it is not harmful, and therefore the conviction must stand.

**[2]** Mancebo argues that he was denied his right to effective assistance of counsel at his original trial because his counsel failed to object to the state's introduction of the recording of

a conversation Mancebo had with police, during which Mancebo indicated his desire not to take a polygraph examination.[1] We do not focus on the performance of Mancebo's counsel, though, because a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered . . . as a result of the alleged deficiencies," *Strickland*, 466 U.S. at 697, and we find the prejudice inquiry dispositive.

In other contexts, when similar evidence has been found to be prejudicial, the objectionable evidence had much more attention drawn to it than in this case. In *Guam v. Veloria*, 136 F.3d 648 (9th Cir. 1998), we held that a potential error (in that case, references to post-arrest silence) was prejudicial because it was the "entire testimony [of a particular witness]." *Id.* at 652. Likewise, in *Crotts v. Smith*, 73 F.3d 861 (9th Cir. 1996), a case discussing the prejudicial nature of a defendant's statement about "killing a cop," we stressed the frequency of the references to this comment during several rounds of witness questioning. *Id.* at 864. *See also People v. Hogan*, 647 P.2d 93, 110 n.12 (Cal. 1982) (in bank) (finding prejudice where judge specifically alerted jury to prejudicial nature of polygraph evidence).

**[3]** By contrast, in this case the polygraph issue played only a minor role at the trial. The reference to the polygraph examination occupies a few sentences in the written transcript and a brief moment of the long entire recorded conversation. The recorded conversation itself was never raised in the testimony of any witness. Neither the judge nor either party made any reference at all to the polygraph evidence when the recorded conversation was played during the trial.

---

[1]Since the evidence produced during the evidentiary hearing almost exclusively addresses deficient performance rather than prejudice—and is therefore immaterial to our prejudice discussion—we need not address the propriety of the district court decision to hold an evidentiary hearing.

**[4]** When polygraph evidence has played a small role in a trial, as it did here, it has not been deemed prejudicial. *See Thornburg v. Mullin*, 422 F.3d 1113, 1125 (10th Cir. 2005) ("Matheson's . . . *isolated* comment regarding the results of his polygraph exam did not infect the trial") (emphasis added)); *United States v. Blaze*, 143 F.3d 585, 594 (10th Cir. 1998) (stating that a "single unsolicited mention of a polygraph" did not warrant a new trial); *United States v. Tedder*, 801 F.2d 1437, 1445 (4th Cir. 1986) (indicating that a "limited, inadvertent reference" to a polygraph test did not support a prejudice determination); *People v. Cox*, 70 P.3d 277, 298-99 (Cal. 2003) (stating that a single improper question asked by the prosecutor was not prejudicial because it was not part of "a pattern of conduct").

**[5]** In addition to the small role the polygraph evidence played in the trial, there is sufficient other evidence supporting Mancebo's conviction to preclude us from finding "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. For example, the evidence clearly indicates that Mancebo was angry the night of the murder because his girlfriend had terminated their relationship, and he was angry that the eventual murder victim, Philip Anthony Rios, engaged in a sexual relationship with another woman Mancebo had been interested in for several years. Mancebo had stated several times that he wanted to murder Rios. Furthermore, several associates and even an eyewitness testified that Mancebo murdered Rios. Mancebo questions the truthfulness of some of the witnesses in this case, but he does not contest substantial portions of the damning evidence against him.

**[6]** Because of the small role that the polygraph evidence played and because of the weight of the other evidence, Mancebo is not able to meet the high burden created by AEDPA for this court to overturn his conviction.

**Affirmed.**