**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Dennis William BLACKSTONE,
Defendant–Appellant.**

No. 94–10428.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 12, 1995.

Decided June 7, 1995.

Judith Nancy Rosenberg, Asst. Federal Public Defender, Tucson, AZ, for defendant-appellant.

Claire K. Lefkowitz, Asst. U.S. Atty., Tucson, AZ, for plaintiff-appellee.

Before: GOODWIN, POOLE, and KLEINFELD, Circuit Judges.

GOODWIN, Circuit Judge:

Dennis Blackstone appeals his conviction for possession of a firearm by a felon, 18 U.S.C. § 922(g)(1). He claims the district court erred in 1) admitting overly prejudicial evidence of drug paraphernalia, expert testimony connecting guns and drugs, and the nature of his prior conviction; 2) refusing to allow surrebuttal testimony; and 3) refusing to suppress evidence of the search of his truck and his pre-Miranda statements.

## I. FACTS AND PROCEDURAL HISTORY

Shortly after 11 p.m. on June 5, 1992, trucker Dennis Blackstone stopped his 18-wheeler at the port of entry on the border between Arizona and New Mexico and attempted to purchase a permit to cross the state. After Arizona Department of Public Safety Officer Chris Long noticed two violations in Blackstone's log book, he decided to inspect the truck.[1] He testified at trial that at this time he smelled marijuana on Blackstone, although Blackstone did not appear incapacitated. While inspecting the cab of the truck, Long spied a marijuana pipe on the floor, which led him to notice and to open a tin playing card box that contained approximately two and one-half grams of marijuana. Long arrested Blackstone, handcuffed him and took him to the nearby Motor Vehicle Department ("MVD") office. He did not read Blackstone his rights.

Long then began to search the truck in earnest. Behind the truck's cab he found more paraphernalia used to smoke marijuana, as well as four pages of recipes for making methamphetamine. He also found papers that led him to suspect Blackstone might be prohibited from possessing firearms. Finally, in the passenger door pocket, Long discovered a .380 semiautomatic Colt Mark IV handgun enclosed in a cloth gun case, loaded and with the safety off.

Long packed his discoveries into a paper bag, collected Blackstone from the MVD and took him, still handcuffed, to his own office. He still did not read Blackstone his rights. Then, in front of the handcuffed Blackstone, Long began to empty the bag piece by piece. As soon as he removed the gun, still in its case, Blackstone blurted out, "I was afraid you'd find that." Blackstone then told Long he was a convicted felon, the gun was his

---

1. Pursuant to the Arizona Revised Statutes and the Code of Federal Regulations, Long has the right to inspect incoming commercial vehicles for safety and regulatory compliance.

wife's, and she must have put it in the truck without his knowledge.

On March 10, 1993, a grand jury indicted Blackstone on one count of possession of a firearm by a felon. 18 U.S.C. § 922(g)(1).[2] Blackstone's first trial lasted four days and ended in mistrial after the jury deadlocked. Blackstone's second trial resulted in his conviction and, ultimately, his sentence of 27 months imprisonment, to be followed by a term of supervised release.

At trial, the crucial issue was whether Blackstone had knowledge of the gun found in the truck he was driving. No physical evidence, such as fingerprints, existed to connect Blackstone to the gun.[3] The government put forth the theory that, because Blackstone had drugs, and because drugs and guns go together, Blackstone had a motive for having a gun and must have known of it. A special agent with the Drug Enforcement Agency ("DEA") testified that firearms and methamphetamine laboratories invariably go together. In his defense, Blackstone claimed he had no knowledge of the gun's presence. His girlfriend, Dena Marie, testified she had bought the gun for her own protection, had put it in the passenger door pocket of the truck at a time when she intended to accompany Blackstone on a trip, and then neglected either to tell him or remove the gun when she changed her plans.

## II. ADMISSION OF DRUG–RELATED EVIDENCE

■ We review for abuse of discretion a district court's decision to admit evidence of extrinsic acts, *United States v. Feldman,* 788 F.2d 544, 557 (9th Cir.1986), *cert. denied,* 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987), and its decision to allow expert testimony, *United States v. Rahm,* 993 F.2d 1405, 1409–10 (9th Cir.1993) (clarifying standard to be abuse of discretion rather than "manifest error").

Over the objections of the defense, the district court allowed the admission of the marijuana paraphernalia and the methamphetamine recipes under Fed.R.Evid. 404(b). The government's avowed purpose in introducing this evidence was to defeat an anticipated "no knowledge" defense by Blackstone. The government reasoned that Blackstone's possession of marijuana paraphernalia and the methamphetamine recipes made it reasonable to assume that he intended to have a gun. The government based its theory on cases holding that evidence of drug-*trafficking* is relevant to the charge of being a convicted felon in possession because of the "logical nexus between guns and drug traffic." *See United States v. Butcher,* 926 F.2d 811, 816 (9th Cir.) ("evidence of narcotics trafficking may be properly admitted to show knowing possession of a weapon."), *cert. denied,* 500 U.S. 959, 111 S.Ct. 2273, 114 L.Ed.2d 724 (1991); *United States v. Simon,* 767 F.2d 524, 527 (8th Cir.), *cert. denied,* 474 U.S. 1013, 106 S.Ct. 545, 88 L.Ed.2d 474 (1985); *United States v. Fuller,* 887 F.2d 144, 147 (8th Cir.1989), *cert. denied,* 496 U.S. 908, 110 S.Ct. 2592, 110 L.Ed.2d 273 (1990).

■ The evidence that Blackstone had marijuana for his personal use was simply not relevant to his knowing possession of the gun. The reasons the courts have been willing to assume that *drug-trafficking* is relevant to the question whether the defendant possessed a firearm do not support drawing a connection between the possession of marijuana for personal use and the possession of a firearm. Courts that have assumed a connection between drugs and guns explain that "drug traffickers typically possess weapons to guard their drugs and money." *Butcher,* 926 F.2d at 813. The dangers of drug-trafficking may rationalize a trafficker's need for firearms, but nothing suggests that those who possess small quantities of marijuana for

2. Title 18 U.S.C. § 922(g) reads, in relevant part, "[i]t shall be unlawful for any person (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... [to] possess in or affecting commerce, any firearm or ammunition...."

3. Upon discovering the gun, Officer Long removed the magazine and the round in the chamber to make it safe. He did not attempt to preserve any possible fingerprints, thinking this was neither necessary nor possible if he were to unload the gun safely. A subsequent investigation disclosed no prints.

personal use feel equally compelled to carry weapons.

■ This leaves the question whether the evidence of methamphetamine recipes, the only evidence that could possibly connect Blackstone to drug-trafficking and thus to the gun, should have been admitted. While relevant to an inquiry whether Blackstone was involved in drug-trafficking, a point not suggested by anything else in the record, the probative value of these recipes was heavily outweighed by their prejudicial effect.

In this case, the tendency of the methamphetamine recipes to establish Blackstone's connection to a methamphetamine lab was zero to slight. While their possession makes it worth investigating whether Blackstone was involved in methamphetamine production, the recipes themselves prove very little. It is not illegal simply to have them; moreover, Blackstone could have kept them for purposes that are either innocent (idle curiosity) or at least noncriminal (thinking about going into the drug business). Unlike chemicals or laboratory equipment that strongly suggest that production of methamphetamine is currently ongoing, methamphetamine recipes by themselves are not closely linked to immediate illegal activity.

■ Moreover, the prejudicial effect of the introduction of these recipes outweighs any probative value. "Unfair prejudice" in the context of balancing evidence means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed.R.Evid. 403, Notes of Advisory Committee. Evidence is prejudicial if it "appeals to the jury's sympathies, arouses its sense of horror, provokes its instincts to punish, or triggers other mainsprings of human action...." 1 *Weinstein's Evidence* § 403[3], pp. 37–41. It is particularly prejudicial when, as here, "the proffered evidence connects a party with a highly charged public issue, such as ... narcotics." 1 *Weinstein's Evidence* § 403[3], pp. 43–44. The district court's admission of the methamphetamine recipes, when accompanied by the evidence discussed in Part III, added up to an abuse of discretion.

## III. EXPERT TESTIMONY

■ The district court also allowed a DEA agent to testify at great length to the relationship between methamphetamine and firearms. The agent told the court he had always seen firearms in methamphetamine laboratories and that such laboratories were generally found in remote areas because the materials used are very poisonous or explosive or both. The prosecutor in his closing arguments, referred to the agent's testimony, told the jury that Blackstone's methamphetamine recipes were intended for use in the illegal manufacture of the drug. This argument had no support in the evidence. It had a potential negative impact on a jury. The expert testimony should have been excluded for the same reasons that the methamphetamine recipes should have been excluded. The combined effect of the recipes and the expert opinion evidence violated Rule 403. The violation was prejudicial and requires a third trial.

## IV. OTHER CLAIMS

■ Blackstone's remaining claims are meritless. First, the government was not required to accept Blackstone's offer to stipulate to the fact of his prior conviction. *See United States v. Breitkreutz,* 8 F.3d 688 (9th Cir.1993). Second, the district court did not abuse its discretion in excluding proffered surrebuttal testimony as cumulative. *See United States v. McCollum,* 732 F.2d 1419, 1426 (9th Cir.), *cert. denied,* 469 U.S. 920, 105 S.Ct. 301, 83 L.Ed.2d 236 (1984); *United States v. Gaertner,* 705 F.2d 210, 217 (7th Cir.1983), *cert. denied,* 464 U.S. 1071, 104 S.Ct. 979, 79 L.Ed.2d 216 (1984). Third, the combination of the odor of marijuana on Blackstone and the marijuana pipe lying in plain view constituted probable cause for Officer Long's search of Blackstone's truck. *See United States v. Johns,* 469 U.S. 478, 482, 105 S.Ct. 881, 884, 83 L.Ed.2d 890 (1985) (odor); *United States v. Garcia–Rodriguez,* 558 F.2d 956, 964–65 (9th Cir.1977) (contraband in plain view), *cert. denied,* 434 U.S. 1050, 98 S.Ct. 900, 54 L.Ed.2d 802 (1978). Fourth, Long's actions in removing the gun from his bag and placing it on the desk did not constitute "interrogation" that violated

Blackstone's *Miranda* rights. *See Rhode Island v. Innis,* 446 U.S. 291, 299–301, 100 S.Ct. 1682, 1688–90, 64 L.Ed.2d 297 (1980). Lastly, the district court did not err in denying Blackstone's motion for acquittal because, on the evidence, "any rational trier of fact could have found all the essential elements of the crime charged beyond a reasonable doubt." *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

REVERSED and REMANDED.