**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Fernando VIZCARRA–MARTINEZ, Defendant–Appellant.**

No. 94–50281.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 4, 1995.

Decided June 21, 1995.

As Amended on Denial of Rehearing and Suggestion for Rehearing En Banc Sept. 21, 1995.

Lee Anne Mattson, San Diego, CA, for defendant-appellant.

Bruce R. Castetter, Assistant United States Attorney, San Diego, CA, for plaintiff-appellee.

Before MONROE G. MCKAY,* REINHARDT, and FERNANDEZ, Circuit Judges.

Opinion by Judge REINHARDT; Dissent by Judge FERNANDEZ.

### ORDER

The opinion filed June 21, 1995, is amended as follows:

With these amendments to the opinion, the panel has voted to deny the petition for rehearing and to reject the suggestion for rehearing en banc.

The full court was advised of the suggestion for rehearing en banc and no judge of the court has requested a vote on it.

The petition for rehearing is denied and the suggestion for rehearing en banc is rejected.

### OPINION

REINHARDT, Circuit Judge:

This appeal presents various factual and legal questions regarding the sentence and conviction of the defendant, Fernando Vizcarra–Martinez. Although we decline the defendant's invitation to reverse his conviction based upon the insufficiency of the evidence and find no merit in his claim that the evidence seized during the search of his car was improperly admitted, we conclude that the district court committed reversible error by admitting evidence of his drug use to prove that he conspired to possess and possessed hydriodic acid with knowledge that it would be used to manufacture methamphetamine. Because we reverse on this ground, we do not consider Vizcarra–Martinez's remaining contentions regarding the district court's evidentiary rulings and its sentencing decision.[1]

### I.

Vizcarra–Martinez was indicted with six other defendants. He was charged in Count I with conspiracy to wrongfully possess a listed chemical knowing and having reasonable cause to believe that it would be used to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(d)(2), 802(33), 802(34), 802(34)(X), and 846; he was also charged in Count II with wrongful possession of a listed chemical knowing and having reasonable cause to believe that it would be used to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(d)(2), 802(33), and 802(34)(X). Vizcarra–Martinez moved to exclude evidence of his possession of a personal-use amount of methamphetamine and certain post-arrest statements. The motions were denied. After a trial, the jury returned a verdict of guilty on both counts. Vizcarra–Martinez was sentenced to concurrent sentences of 70 months, to be followed by a three-year term of supervised release.

### II.

We first must evaluate whether there was sufficient evidence to convict Vizcarra–Martinez. In doing so, we must assume that the evidence at trial was properly admitted. *Lockhart v. Nelson,* 488 U.S. 33, 40–42, 109 S.Ct. 285, 290–91, 102 L.Ed.2d 265 (1988). We have consistently held that there is sufficient evidence to support a conviction if, "reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential

---

* The Honorable Monroe G. McKay, Senior Circuit Judge for the Tenth Circuit, sitting by designation.

1. We decide the defendant's Fourth Amendment claim because virtually all of the evidence against him was obtained as the result of the search of his car and the exclusion of that evidence would render further proceedings futile. We decline, as a matter of discretion, to decide other evidentiary questions that raise difficult issues of law because they are unnecessary to the outcome of this appeal, they will likely not affect any decision as to retrial, and it may not be necessary for us ever to resolve them.

elements of the crime beyond a reasonable doubt." *United States v. Bishop*, 959 F.2d 820, 829 (9th Cir.1992) (citation omitted). Because the defendant failed to renew his objection based on the sufficiency of the evidence at the end of the trial, we may only review the denial of the motion to prevent a miscarriage of justice. *United States v. Comerford*, 857 F.2d 1323, 1324 (9th Cir. 1988), *cert. denied*, 488 U.S. 1016, 109 S.Ct. 812, 102 L.Ed.2d 802 (1989). We note that the application of the miscarriage of justice standard to insufficiency of the evidence cases could lead to difficult problems for a court. We would certainly be reluctant to affirm a conviction and send a defendant to prison or his death if the record clearly showed that the evidence was insufficient. Yet, even under our ordinary test—the standard applicable when the defendant makes all the proper motions—we cannot reverse unless there is a clear showing as to insufficiency: we must affirm if any rational trier of fact could have found the evidence sufficient. Thus, it is difficult to imagine just what consequences flow from our application of the two different standards or to envision a case in which the result would be different because of the application of one rather than the other of the standards.

■ Here, however, we need not become entangled in a theoretical inquiry regarding standards of review because we conclude that there was adequate evidence to convict the defendant even under the standard we ordinarily use. Thus, it does not matter whether there is a practical difference between the standards or what the differences may be. In the case before us, there was clearly adequate evidence to establish that a conspiracy to manufacture methamphetamine existed and that the defendant possessed the hydriodic acid in question. It is a closer question as to (1) whether, having established the existence of a conspiracy, the government has proved beyond a reasonable doubt a connection between Vizcarra–Martinez and the conspiracy, *see United States v. Melchor–Lopez*, 627 F.2d 886, 891 (9th Cir. 1980), and (2) whether there was adequate evidence for the jury to conclude that the defendant knew or had reason to believe that the acid would be used to manufacture meth-

amphetamine. The government produced no direct evidence tying Vizcarra–Martinez to the conspiracy or indicating that he had any knowledge of its scope; indeed, the leaders of the conspiracy *and* the DEA conceded that they had never encountered Vizcarra–Martinez before the day of the search.

■ However, our review of the record indicates that, although the case before us is a close one, there was sufficient evidence presented at trial to permit a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to infer the knowledge necessary to convict on both counts. In addition to the defendant's conduct at the scene of the offense, there was other circumstantial evidence in the record tending to show that the defendant knew of and was connected to the conspiracy. This case is therefore distinguishable from *United States v. Umagat*, 998 F.2d 770, 772–74 (9th Cir.1993), in which we held that when the government proves only that a defendant is involved in a single transaction that is but a part of a substantial ongoing conspiracy, and offers no other evidence as to the defendant's knowledge of the overall conspiracy, there is insufficient evidence to permit a factfinder to impute knowledge of the broad conspiracy. Accordingly, we decline the defendant's invitation to reverse the conviction on this ground.

### III.

Vizcarra–Martinez also appeals the district court's decision to deny his motion to suppress the evidence seized during a search of his car. Between November, 1992 and April, 1993, special agents of the Drug Enforcement Administration (DEA) investigated the methamphetamine manufacturing and trafficking activity of Noe Bueno Perez. During that period, the DEA relied upon a confidential informant to infiltrate Perez's organization. Perez ultimately attempted to purchase large quantities of the precursor chemicals necessary to manufacture methamphetamine from the DEA agent.

On April 6, 1993, Perez purchased a thirty-gallon drum of hydriodic acid for $9,500 in cash from the DEA agent. The acid was

loaded into a Chevrolet Blazer and ultimately traced to a residence at 725 Oak Tree Lane in San Marcos, California. During the DEA's surveillance of the residence, agents observed a red Ford Escort backing into the garage where the Blazer was parked. They observed several containers being placed in the car. The car remained in the garage for approximately ten minutes and then departed. Local police pulled the car over and searched it, discovering approximately ten gallons of hydriodic acid. Shortly after the Ford Escort had departed, the Blazer, which had delivered the acid to the garage, emerged from the garage and left the area. Again the local police department pulled over and searched the car. This time, no hydriodic acid was found.

A short time later, a brown Toyota sedan, driven by Vizcarra–Martinez, arrived at the garage and backed into it. The door was closed. Five minutes later, the garage door opened and the Toyota moved into a parking space across from the residence. After five or six minutes, the Toyota left the area and was pulled over by local police officers, who discovered hydriodic acid in the car. The defendant was subsequently arrested. He maintains that the search and subsequent arrest violated the Fourth Amendment because the police lacked probable cause to search the car.

■ On appeal, the government initially argues that Vizcarra–Martinez gave permission for the search to take place after he was pulled over and, thus, that all that was required was the reasonable suspicion necessary to support the investigatory stop that led to the search. While conceding that it failed to raise this argument below, the government asserts that this court may uphold the search on this ground, citing *United States v. Linn*, 880 F.2d 209, 214 (9th Cir. 1989).

■ The government mischaracterizes the *Linn* decision. In *Linn*, we held that a court of appeals *may* affirm a decision to admit evidence on a different ground than that relied upon by the district court as long as "the issue has been fully briefed on appeal, and there is sufficient basis in the record for us to address it." *Linn*, 880 F.2d at 214. In

this case, the issue has not been fully briefed since Vizcarra–Martinez did not address it in his initial brief and did not file a reply brief. More important, the issue of consent is a factual question that has not been adequately explored below; Vizcarra–Martinez had no reason to develop a full factual record regarding that issue. Accordingly, we conclude that the government has waived its right to raise this issue on appeal.

■ Nevertheless, we agree with the government that the district court properly admitted the evidence because there was probable cause to conduct the search. *California v. Acevedo*, 500 U.S. 565, 570–73, 111 S.Ct. 1982, 1986–88, 114 L.Ed.2d 619 (1991); *United States v. Ross*, 456 U.S. 798, 799–800, 825, 102 S.Ct. 2157, 2159–2160, 2173, 72 L.Ed.2d 572 (1982). Probable cause exists when "the facts available to the officer would 'warrant a man of reasonable caution in the belief' that certain items may be contraband.... A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required" for the search. *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983) (citations omitted).

The police had good reason to believe at the time of the search that quantities of hydriodic acid were inside the garage of the residence in question. After their first search of the red Ford Escort, they also knew that at least one driver had picked up some of that acid to deliver it elsewhere. Significantly, Vizcarra–Martinez acted in a manner that was remarkably similar to the conduct of the driver of the other delivery car—he drove into the garage, stayed for a few minutes, and then departed the area. Under these circumstances, we conclude that the police could reasonably believe that there was hydriodic acid in Vizcarra–Martinez's car.

On appeal, Vizcarra–Martinez contends that *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238 (1979), prevents us from holding that there was probable cause for the search. In *Ybarra*, the Supreme Court held that a "person's mere propinquity to others independently suspect-

ed of criminal activity does not, without more, give rise to probable cause to search that person." However, in contrast to the defendant in *Ybarra*, Vizcarra–Martinez was not merely observed associating with those suspected of criminal activity; his own actions, and the other facts known to the police, strongly suggested that he was delivering hydriodic acid and therefore was not an "innocent visitor." *See United States v. Robertson*, 833 F.2d 777, 782 (9th Cir.1987).

We conclude that the facts of this case more closely resemble those in *United States v. Curtis*, 562 F.2d 1153 (9th Cir.1977), *cert. denied*, 439 U.S. 910, 99 S.Ct. 279, 58 L.Ed.2d 256 (1978), where we held that probable cause existed to search two trucks when they were observed approaching an airplane believed to contain drugs, parking near the plane for a few moments, and then driving away (initially with their headlights off). *Curtis*, 562 F.2d at 1155–56. As in *Curtis*, the DEA had evidence that Vizcarra–Martinez briefly stopped at a location where its agents knew illicit substances to be present. Moreover, his conduct was quite similar to that of a drug transporter; in fact, his activities closely resembled those of the first driver, whom the police discovered to be in possession of precursor chemicals.[2] Accordingly, we conclude that probable cause existed for the search and affirm the district court's decision to admit the evidence.

## IV.

Vizcarra–Martinez also contests the district court's decision to admit evidence that he was in possession of a small, personal-use amount of methamphetamine when he was arrested. He contends that such evidence constitutes "other act" evidence that is unrelated to the underlying offense and accordingly should not have been admitted under Rule 404.[3] We agree that the district judge abused her discretion in admitting this evidence.

### A. *"Other Act" Evidence*

The government initially maintains that we need not evaluate the district court's decision to admit the evidence in question under Rule 404. It asserts that the evidence was not "other act" evidence, and was exempted from the requirements of Rule 404, because it was "inextricably intertwined" with the underlying offense. We disagree.

■ There are generally two categories of cases in which we have concluded that "other act" evidence is inextricably intertwined with the crime with which the defendant is charged and therefore need not meet the requirements of Rule 404(b). First, we have sometimes allowed evidence to be admitted because it constitutes a part of the transaction that serves as the basis for the criminal charge. For example, in *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir.1993), we concluded that contemporaneous sales of cocaine and crank by the defendant were inextricably intertwined with the crime with which the defendant was charged: the sale of cocaine. As we noted in *Williams*, "[t]he policies underlying rule 404(b) are inapplicable when offenses committed as part of a 'single criminal episode' become other acts simply because the defendant 'is indicted for less than all of his actions.'" *Williams*, 989 F.2d at 1070 (quoting *United States v. Soliman*, 813 F.2d 277, 278 (9th Cir.1987)). Thus, when it is clear that particular acts of the defendant are part of, and thus inextricably intertwined with, a single criminal transaction, we have generally held that the admission of evidence regarding those acts does not violate Rule 404(b).

Second, we have allowed "other act" evidence to be admitted when it was necessary to do so in order to permit the prosecutor to offer a coherent and comprehensible story

---

**2.** Vizcarra–Martinez's conduct was even more suspicious than that of the first driver. The door to the garage was closed for the five minutes he was inside, strongly suggesting that the action was designed to conceal a transfer of something to his car.

**3.** Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of the person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identify, or absence of mistake or accident...." *Fed.R.Evid.* Rule 404(b).

regarding the commission of the crime; it is obviously necessary in certain cases for the government to explain either the circumstances under which particular evidence was obtained or the events surrounding the commission of the crime. This exception to Rule 404(b) is most often invoked in cases in which the defendant is charged with being a felon in possession of a firearm. For example, in *United States v. Daly,* 974 F.2d 1215, 1216 (9th Cir.1992), evidence regarding a shoot-out was considered to be "inextricably intertwined" with the charge that the defendant was a felon in possession of a firearm. We based our holding upon the fact that "evidence regarding the shoot-out was necessary to put [the defendant's] illegal conduct into context and to rebut his claims of self defense." *Id.* . Recognizing the difficulty that the prosecution would encounter in proving that the defendant possessed a gun and in rebutting his proffered defense without relating the facts surrounding the commission of the crime, we observed that "the prosecution is not restricted to proving in a vacuum the offense of possession of a firearm by a felon.... '[The jury] cannot be expected to make its decision in a void—without knowledge of the time, place, and circumstances of the acts which form the basis of the charge.'" *Id.* (quoting *United States v. Moore,* 735 F.2d 289, 292 (8th Cir.1984)).

 It is clear that the evidence in this case does not fall within either of these exceptions. Coincidence in time is insufficient. The mere fact that a defendant is in possession of a small amount of a prohibited narcotic substance at the time he commits a crime is not enough to support the introduction of the evidence of drug usage. There must be a sufficient contextual or substantive connection between the proffered evidence and the alleged crime to justify exempting the evidence from the strictures of Rule 404(b). Here, there was no such relationship. First, the defendant's personal use of methamphetamine was, unquestionably, not a part of the transaction with which he was charged—possession of hydriodic acid with knowledge that it would be used to manufacture methamphetamine. The prosecution presented absolutely no evidence that the methamphetamine in question was obtained from a member of the conspiracy or that Vizcarra–Martinez had been involved in its manufacture or distribution. Second, it is clear that the prosecution would encounter little difficulty in presenting the evidence relevant to its case against the defendant—his possession of hydriodic acid and the circumstances surrounding the commission of that crime—without offering into evidence the personal-use amount of methamphetamine the police discovered in the defendant's pocket upon arrest. The methamphetamine found in the defendant's pocket had nothing to do with the incidents leading to the search, nor did it have any bearing upon the commission of the crime. Thus, we reject the government's contention that the contested evidence was so inextricably intertwined with the crime as to fall outside the scope of Rule 404(b).

## B. *Rule 404(b) Test*

Because we conclude that the evidence in question represents "other act" evidence, we must apply our court's four-part test to determine whether it should have been excluded. Under Rule 404(b):

> Evidence of prior criminal conduct may be admitted if (1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) (in cases where knowledge and intent are at issue) the act is similar to the offense charged.[4]

*United States v. Mayans,* 17 F.3d 1174, 1181 (9th Cir.1994). In applying this test, we have repeatedly emphasized that:

> "Extrinsic act evidence is not looked upon with favor." We have stated that "[o]ur reluctance to sanction the use of evidence of other crimes stems from the underlying

---

**4.** "Other act" evidence which meets these four criteria may be admitted and the district court need not make a preliminary finding "that the Government has proved the act by a preponderance of the evidence." *Huddleston v. United States,* 485 U.S. 681, 689, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988).

premise of our criminal system, that the defendant must be tried for what he did, not for who he is." Thus, "guilt or innocence of the accused must be established by evidence relevant to the particular offense being tried, not by showing that the defendant has engaged in other acts of wrongdoing."

*United States v. Bradley*, 5 F.3d 1317, 1320 (9th Cir.1993) (quoting *United States v. Hodges*, 770 F.2d 1475, 1480 (9th Cir.1985)).

Vizcarra–Martinez does not argue that the prior act in this case is too remote in time or that the evidence is insufficient to support a finding that he had in his possession a personal-use amount of methamphetamine. Instead, he rests his case upon the contention that the evidence does not tend to prove a material point and that his alleged possession of an amount of methamphetamine suitable for personal use is not sufficiently similar to the offense charged to justify its admission. In essence, Vizcarra–Martinez argues that the fact that he used methamphetamine does not tend to prove that he was aware that the chemicals he was delivering would be used to manufacture methamphetamine or that he intended to participate in a conspiracy to do so.

The defendant's arguments regarding relevancy and similarity [5] are closely related, *see United States v. Hernandez–Miranda*, 601 F.2d 1104, 1109 (9th Cir.1979) ("The greater is the dissimilarity of the two offenses, the more tenuous is the relevance."), and we address them both together. We conclude that the evidence regarding Vizcarra–Martinez's drug use was not sufficiently relevant to the charged offense and that it does not tend to prove the requisite knowledge.

■ In order to admit evidence concerning other "bad acts," the government must prove "a logical connection between the knowledge gained as a result of the commission of the [other] act and the knowledge at issue in the charged act." *Mayans*, 17 F.3d at 1181–82. Here, there exists no logical connection between the knowledge that the defendant might have gained by using methamphetamine and the knowledge that the government must prove that he possessed at the time of his arrest—that is, knowledge of the use to which the hydriodic acid in his possession would be put as well as knowledge of the scope and purpose of the conspiracy.[6]

■ We conclude that evidence of possession of a small quantity of drugs does not tend to prove that a defendant is aware of the use to which a particular chemical in his possession will be put—more specifically, that possession of a small amount of methamphetamine for personal use does not tend to prove that Vizcarra–Martinez was aware that hydriodic acid could be transformed into methamphetamine through a complicated manufacturing process. Viewing the case from "common human experience," *Hernandez–Miranda*, 601 F.2d at 1108, it is clear that most people who use drugs—indeed, most people who use *legal* chemical substances, such as cleaning fluid or paint or

---

**5.** We recognize that "in cases involving the use of prior crimes to show 'opportunity, knowledge, preparation or motive,' similarity may or may not be necessary depending upon the circumstances." *United States v. Miller*, 874 F.2d 1255, 1269 (9th Cir.1989); *see also United States v. Bailleaux*, 685 F.2d 1105, 1110 n. 1 (9th Cir. 1982). We do not consider whether our courts' four-part test regarding admission of evidence under Rule 404(b) requires that the "bad act" in question be precisely similar to the charged offense. Instead, we simply use the similarity inquiry as a means to assess the relevance and probative value of the evidence. *See United States v. Hernandez–Miranda*, 601 F.2d 1104, 1109 (noting the relationship between the similarity and relevance inquiries); *see also United States v. Bibo–Rodriguez*, 922 F.2d 1398, 1402 (9th Cir.) ("Similarity, to the extent that it bears on the relevance of the subsequent act, is neces-

sary to indicate knowledge and intent."), *cert. denied*, 501 U.S. 1234, 111 S.Ct. 2861, 115 L.Ed.2d 1028 (1991).

**6.** While this court has suggested there may be a logical connection between knowledge of the *use* of cocaine and knowledge of the *use* of heroin, we have not suggested such a connection between knowledge of the use of a drug and knowledge of that drug's manufacturing process. *See, e.g., United States v. Marshall*, 526 F.2d 1349, 1360–61 (9th Cir.1975), *cert. denied*, 426 U.S. 923, 96 S.Ct. 2631, 49 L.Ed.2d 376 (1976) (admitting evidence of possession of cocaine at the time of offense when defendant charged with conspiracy to possess and distribute heroin); *United States v. Perez*, 491 F.2d 167, 171–72 (9th Cir.), *cert. denied*, 419 U.S. 858, 95 S.Ct. 106, 42 L.Ed.2d 92 (1974) (same).

medicine—do so without having the faintest idea as to how the substance is produced or what ingredients are required to manufacture it. We simply cannot assume, as the government requests us to, that Vizcarra–Martinez's use of methamphetamine tended to prove that he knew that the chemical in his possession would be used in the methamphetamine manufacturing process. There may have been other reasons that the defendant was aware of the purpose of the hydriodic acid delivery, but his personal drug use was not one of them. Indeed, we would be especially reluctant to sanction the use of such evidence where, as here, the government has not presented any evidence indicating that the methamphetamine in question was produced by the members of the conspiracy.

Similarly, we hold that evidence that the defendant used methamphetamine, or possessed a small amount of the drug, does not tend to prove that he participated in a conspiracy to manufacture it. We believe that this is precisely the type of abuse that Rule 404 was designed to prevent; bad act evidence cannot be used to prove a defendant's propensity to commit a crime. *See Mehrmanesh,* 689 F.2d at 830; *United States v. Hernandez–Miranda,* 601 F.2d 1104, 1108 (9th Cir.1979); *see also United States v. Hill,* 953 F.2d 452, 456–58 (9th Cir.1991). Indeed, in *United States v. Mehrmanesh,* 689 F.2d 822, 832 (9th Cir.1982), we explicitly rejected the government's argument that "the jury could infer that since [the defendant] used drugs he was likely to participate in their importation." The rationale for our holding in *Mehrmanesh* is equally persuasive in this case.

Irrespective of any inference that may be drawn from evidence of an individual's *possession or use* of a drug in assessing their knowledge, intent, or motive to *possess or distribute* another drug, *see, e.g., United States v. Hegwood,* 977 F.2d 492, 497 (9th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 2348, 124 L.Ed.2d 257 (1993) (holding that evidence of prior possession or sale of cocaine is admissible in a prosecution for possession, importation, and intent to distribute narcotics), there is an important distinction to be drawn between an individual's private use of a small quantity of a drug and his knowledge of the drug's manufacturing process or his participation in a large-scale conspiracy to possess precursor chemicals in order to manufacture that drug. In *United States v. Blackstone,* 56 F.3d 1143, 1145 (9th Cir.1995), we distinguished between an individual's possession of marijuana for personal use and drug trafficking.[7] An assumed connection between drug trafficking and guns may be explained by the theory that "drug traffickers typically possess weapons to guard their drugs and money." *Id.* "[B]ut nothing suggests that those who possess small quantities of marijuana for personal use feel equally compelled to carry weapons." *Id.* Likewise, nothing suggests an individual who possesses a small quantity of methamphetamine for personal use feels compelled to participate in a conspiracy to manufacture that drug.

As we noted in *United States v. Bibo-Rodriguez,* 922 F.2d 1398 (9th Cir.), *cert. denied,* 501 U.S. 1234, 111 S.Ct. 2861, 115 L.Ed.2d 1028 (1991), " '[t]he relevant factor is the type of activity undertaken, *not the identity of the drugs.*' " *Id.* at 1402 (emphasis added) (quoting *United States v. Moschiano,* 695 F.2d 236, 245 (7th Cir.1982), *cert. denied,* 464 U.S. 831, 104 S.Ct. 110, 78 L.Ed.2d 111 (1983)); *see also United States v. McLister,* 608 F.2d 785, 789 (9th Cir.1979) (concluding that a conviction for possessing marijuana should not be used to convict the defendant for distribution of cocaine because it has "little probative value . . . to prove *any* of the purposes listed in Rule 404(b)" (emphasis added)); *cf. United States v. Bramble,* 641 F.2d 681, 682 (9th Cir.1981) (emphasizing the distinction between being convicted of possession and being convicted of distribution or possession with intent to distribute). The

---

7. In *Blackstone* we found:
 The evidence that [the defendant] had marijuana for his personal use was simply not relevant to his knowing possession of [a] gun. . . . The reasons the courts have been willing to assume that drug-trafficking is relevant to the question whether the defendant possessed a firearm do not support drawing a connection between the possession of marijuana for personal use and the possession of a firearm. *Id.*

government has, in effect, invited us to draw conclusions regarding the knowledge and criminal propensities of drug users without providing any legal or factual support for doing so. Rule 404(b), and common sense, prevent us from concluding that this evidence was properly admitted.

A second, independent justification prevents us from upholding the admission of the disputed evidence. Even if we found the government's arguments to be persuasive—and we do not—we would nevertheless be compelled to conclude that the district court erred in light of our decision in *United States v. Hill*, 953 F.2d 452 (9th Cir.1991). In *Hill*, we held that evidence that a defendant had used cocaine prior to the drug transaction in question could not be admitted as evidence to convict him of conspiracy and attempt to possess with intent to distribute cocaine. Despite the fact that the defendant had used the *same* drug that he was convicted of possessing with intent to distribute, we held that the evidence was inadmissible because "the testimony at issue had no direct bearing on

the elements of conspiracy in this case." *Hill*, 953 F.2d at 457.[8]

■ We are at a loss as to how we could hold that the evidence in this case was properly admitted since the relationship between the charged offense and the "other act" evidence in this case is even more attenuated than was the relationship in *Hill*. Given that *Hill* prevents the prosecution from using evidence that the defendant used a drug to convict him for possessing precisely the *same* drug with intent to distribute, we cannot conclude that evidence of Vizcarra–Martinez's use of methamphetamine was properly admitted to prove that he possessed an entirely different substance—a precursor chemical which can only be transformed into that drug through a complex manufacturing process—with the requisite knowledge and intent necessary to support a conviction.[9]

### C. *Harmless Error Analysis*

■ Having determined that it was an abuse of discretion for the district court to admit the evidence in question, we examine the record to assess whether the error was

---

**8.** Similarly, we have held in numerous other cases that evidence of drug use or mere possession cannot be used to prove that the defendant possessed a different type of drug with intent to distribute. *See, e.g., United States v. Mehrmanesh*, 689 F.2d 822, 831 (9th Cir.1982) (concluding that admission of evidence concerning the defendant's use of cocaine cannot be admitted as evidence when the underlying offense is the import and attempted distribution of heroin); *United States v. Bramble*, 641 F.2d 681, 683 (9th Cir.1981) ("[t]he appellant's conviction of possession of marijuana is not probative of his predisposition to sell cocaine"); *Enriquez v. United States*, 314 F.2d 703, 713 (9th Cir.1963) (holding that a conviction for possessing marijuana is not sufficiently similar to the offense of selling heroin that it could be considered to be admissible).

**9.** We note that there is considerable confusion in our cases regarding the appropriate treatment of Rule 404(b) challenges, in large part due to the highly fact-specific nature of the inquiry involved. Indeed, at first glance some of our opinions appear to be in considerable tension. *Compare, e.g., United States v. Ramirez–Jiminez*, 967 F.2d 1321, 1326 (9th Cir.1992) (holding that "[w]hen offered to prove knowledge, however, the prior act may not be similar to the charged act as long as the prior act was one which would tend to make the existence of the defendant's knowledge more probable than it would be without the evidence") *with Mayans*, 17 F.3d at 1181 ("[i]n cases where knowledge and intent are at

issue ... the act [must be] similar to the offense charged."). However, our court has made every effort to explain and reconcile these cases. *See, e.g., United States v. Miller*, 874 F.2d 1255, 1269 (9th Cir.1989) (explaining that whether similarity is required to prove knowledge or intent depends heavily upon the facts of the case and the probative use to which the evidence will be put); *see also United States v. Bailleaux*, 685 F.2d 1105, 1110 n. 1 (9th Cir.1982) (same). There is some possibility that our treatment of cases in which evidence of a defendant's previous possession of drugs has been admitted to prove possession of a narcotic with intent to distribute may be inconsistent in some respects. *Compare United States v. Bramble*, 641 F.2d 681, 683 (9th Cir.1981); *Enriquez v. United States*, 314 F.2d 703, 713 (9th Cir.1963) *with United States v. Arambula–Ruiz*, 987 F.2d 599 (9th Cir.1993); *United States v. Marshall*, 526 F.2d 1349 (9th Cir.1975), *cert. denied*, 426 U.S. 923, 96 S.Ct. 2631, 49 L.Ed.2d 376 (1976); *United States v. Perez*, 491 F.2d 167 (9th Cir.), *cert. denied sub nom Lombera v. United States*, 419 U.S. 858, 95 S.Ct. 106, 42 L.Ed.2d 92 (1974). However, these inconsistencies, if they do exist, have no bearing upon the question before us in this case since, as we note above, the connection between the admitted evidence and the charged offense is far more attenuated than in any of the cases in which the admission of evidence of drug possession has been approved.

harmless. *See Hill,* 953 F.2d at 458 (applying harmless error analysis). We may only conclude that an error was harmless if it is "more probable than not that the erroneous admission of the evidence did not affect the jury's verdict." *Id.*

■ Our review of the record reveals that the government relied heavily upon the evidence in question during its opening argument, closing argument, and rebuttal. The prosecutor repeatedly emphasized that Vizcarra–Martinez could not be innocent of the charges because he had used methamphetamine and was therefore "familiar" with it. Several times during closing argument, the prosecutor reiterated his contention that the defendant could not have been ignorant of the purpose of the conspiracy because he used methamphetamine, because he was familiar with the substance, and because he associated with those who used and manufactured it. The government's heavy reliance upon this evidence created a grave danger that the defendant's guilt was established *not* "by evidence relevant to the particular offense being tried," but rather by a "showing that the defendant has engaged in other acts of wrongdoing." *Bradley,* 5 F.3d at 1320 (citations omitted). Given that this case was not "open and shut," we cannot say that it is more probable than not that the government's forceful and repetitive references to the defendant's use of methamphetamine did not affect the jury's decision.

Evidence that a defendant uses drugs is highly prejudicial. We have explicitly held that far less damaging evidence regarding drug use—a misdemeanor conviction for possessing one marijuana cigarette nine years before the crime was committed—could have a "significant" prejudicial effect upon the jury's decision. *United States v. McLister,* 608 F.2d 785, 790 (9th Cir.1979). In light of that holding, it would be especially difficult for us to conclude that the error was harmless in this case, where the drug involved is clearly more serious and the use far more recent. Thus, we conclude that the error was not harmless.

### CONCLUSION

For the reasons set forth above, we reverse and remand for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

FERNANDEZ, Circuit Judge, dissenting:

I agree that the evidence was sufficient to sustain the verdict and that there was probable cause to search Vizcarra–Martinez's car. However, I do not agree that it was prejudicial error to admit the small amount of methamphetamine that Vizcarra–Martinez had on his person when he was arrested.

Often we have even said that possession or use of a drug on a prior occasion is relevant to show the knowing possession of drugs on a second occasion. *See United States v. Santa–Cruz,* 48 F.3d 1118 (9th Cir.1995); *United States v. Hegwood,* 977 F.2d 492 (9th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2348, 124 L.Ed.2d 257 (1993); *United States v. Milner,* 962 F.2d 908 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 614, 121 L.Ed.2d 548 (1992); *United States v. Marshall,* 526 F.2d 1349 (9th Cir.1975), *cert. denied,* 426 U.S. 923, 96 S.Ct. 2631, 49 L.Ed.2d 376 (1976); *United States v. Perez,* 491 F.2d 167 (9th Cir.), *cert. denied,* 419 U.S. 858, 95 S.Ct. 106, 42 L.Ed.2d 92 (1974). It is true that those cases involved prior and current possession of drugs, whereas this case involves possession of a drug and of a precursor chemical. It is also true that a person could possess a drug and not know what chemicals went to make it up. Still, it is also true that a person *could* possess a little cocaine and still not know what heroin was. *But see Marshall,* 526 F.2d at 1360–61 (possession of cocaine could lead to inference of knowledge of heroin); *Perez,* 491 F.2d at 171–72 (same). And a person *could* have used drugs and still not know that a package had drugs in it. *But see Hegwood,* 977 F.2d at 497 (prior use of cocaine is relevant to knowledge, intent, absence of mistake). And a person *could* have used drugs and still not have conspired to distribute them. *But see Santa Cruz,* 48 F.3d at 1120 (prior possession of cocaine relevant to knowing participation in drug deal 12 weeks later); *Milner,* 962 F.2d at 912–13 (evidence of drug use relevant

to show person conspiring to distribute drug). Coulds are interesting, but they do not make evidence irrelevant or inadmissible. So it is here.

Another concept militates against a determination that the admission of the methamphetamine was unfairly prejudicial. We have not been overly prissy about making sure that a defendant knew exactly what drugs he was transporting. We have considered one combination of chemicals to be as good as another. So if a person thought he had marijuana, but had cocaine or heroin, he could be prosecuted for cocaine or heroin possession. *See United States v. Ramirez–Ramirez,* 875 F.2d 772, 774 (9th Cir.1989); *United States v. Lopez–Martinez,* 725 F.2d 471, 475 (9th Cir.), *cert. denied,* 469 U.S. 837, 105 S.Ct. 134, 83 L.Ed.2d 74 (1984). *Cf. United States v. Davis,* 501 F.2d 1344, 1345–46 (9th Cir.1974) (psilocybin mushrooms versus LSD). It is easy to infer that Vizcarra–Martinez knew he was illicitly transporting a chemical substance of some kind. His clandestine activity, his driving to the pickup place with one of the major co-conspirators in tow, his lies, his threats, and his pay all tended to show that he was not just some poor unknowing wretch who was transporting water or gasoline for all he knew. We cannot get inside his head to determine whether he thought he was transporting methamphetamine itself or something to make methamphetamine with. But we can discount his claim that he had no idea at all about what it might be.

Vizcarra–Martinez's possession of methamphetamine was relevant to undercut his total ignorance argument and it did add a piece to the puzzle, even though what the picture was going to be was pretty clear already.

Therefore, I respectfully dissent.