95 F.3d 1160
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellant,
v.
Sergio David ROMO, Defendant-Appellee.
 No. 95-50600.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 6, 1996.
Decided Aug. 28, 1996.
 
 Before: FLETCHER and TASHIMA, Circuit Judges, and RESTANI, Court of International Trade Judge.*
 MEMORANDUM**
 The government appeals from the district court's grant of defendant-appellee Sergio David Romo's ("Romo") motion to suppress certain evidence and statements. Officers assigned to the Orange County Regional Narcotics Suppression Program arrested Romo as he tried to drive away from a residence, which police knew housed large quantities of cocaine. The district court granted Romo's motion to suppress because it found that the police did not have probable cause to arrest him. We have jurisdiction over this appeal pursuant to 18 U.S.C. § 3731, and we reverse.
 Standard of Review
 Generally, we review de novo a trial court's determination of the existence of probable cause. United States v . Becker, 23 F.3d 1537, 1539 (9th Cir.1995). However, we review the district court's findings of fact made in connection with the probable cause determination for clear error. Id. Evidence adduced at a suppression hearing is viewed in the light most favorable to the prevailing party. United States v. Cervantes-Gaitan, 792 F.2d 770, 772 (9th Cir.1986).
 Discussion
 The only issue raised on appeal is whether the investigating officers had probable cause to arrest Romo. Applying circuit authority directly on point, we answer this question in the affirmative. United States v. Vizcarra-Martinez, 66 F.3d 1006, 1010-12 (9th Cir.1995).
 An arrest must be supported by probable cause. United States v. Del Vizo, 918 F.2d 821, 825 (9th Cir.1990) (citing Whiteley v. Warden, 401 U.S. 560, 564-66 (1971)). Moreover, the showing of probable cause must be particularized with respect to the person arrested. Ybarra v. Illinois, 444 U.S. 85, 91 (1979). "Probable cause exists when, at the time of the arrest, the agents know reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused had committed or was committing an offense." United States v. Delgadillo-Velasquez, 856 F.2d 1292, 1296 (9th Cir.1988) (citing United States v. Pinion, 800 F.2d 976, 979 (9th Cir.1986), cert. denied, 480 U.S. 936 (1987)).
 Courts must determine whether, under the totality of the circumstances, the "collective knowledge" of the investigating officers supported probable cause to make the arrest. Del Vizo, 918 F.2d at 825-26. This inquiry is determined from the point of arrest, "prior to any search conducted incident to the arrest." Id. (citing United States v. Potter, 895 F.2d 1231, 1233-34 (9th Cir.), cert. denied, 497 U.S. 1008 (1990)). Thus, in the case at bench, we must determine whether the police had probable cause to arrest Romo before the officers found bundles of cocaine in the garage pursuant to the protective sweep.
 At the time of Romo's arrest, police were aware of the following facts. A huge shipment of cocaine had come into California from Mexico, via undercover DEA agents. Through constant observation, agents were reasonably certain that a large portion of the cocaine had been transported to a home on Garvey Street in West Covina ("Garvey house"). On the morning of Romo's arrest, someone from the Garvey house had used public telephones in a suspicious manner, and had engaged in counter-surveillance driving tactics. These facts strongly suggest that the Garvey house was to be used as a distribution center for cocaine. See Del Vizo, 918 F.2d at 826 (noting that use of public telephones, and counter-surveillance activities are indicators of illegal drug activities).
 After these suspicious activities occurred, co-defendant Hector Cazares-Parra ("Cazares") drove up to the Garvey house in a pickup truck. After backing the truck up to the open garage, Cazares and a man from the Garvey house spent several minutes in the vicinity of the garage and truck. Patrol officers, who stopped Cazares soon after leaving the Garvey house, discovered bundles of cocaine in the truck. This discovery confirmed officers' suspicion that the Garvey house was a cocaine distribution center.
 At this point, Romo arrived at the Garvey house and acted in a manner remarkably similar to Cazares. He backed up the driveway towards the garage, and opened his trunk. A man from the Garvey house and Romo stayed for several minutes in the vicinity of the trunk and opened garage.[1] Romo then shook this man's hand, as though concluding a business deal.[2] After re-checking the contents of the trunk, Romo attempted to leave. These facts overwhelmingly suggest that Romo had just engaged in a drug transaction himself, and put to rest any concern that Romo was arrested based on the activity of others.
 Vizcarra-Martinez, a case addressing the legality of a warrantless search, found probable cause under nearly identical circumstances. 66 F.3d at 1010-12. In Vizcarra-Martinez, DEA agents traced hydriodic acid, a precursor chemical necessary to produce methamphetamine, to a particular residence. Id. at 1010-11. DEA agents later observed a red Ford Escort back into the garage of the residence. Id. at 1011. The Escort remained in the opened garage for ten minutes, during which time officers observed containers being placed in the car. Id. Police stopped the car shortly after it pulled out of the garage, and discovered hydriodic acid in it. Id. A short time later, the defendant drove up to the residence and parked inside the garage. Id. The garage door closed, and the defendant remained inside for about six minutes. Id. Police pulled him over shortly after he left the garage. Id. During a warrantless search of the car, police discovered hydriodic acid. Id.
 In rejecting the defendant's argument that the police did not have probable cause to search his car, Vizcarra-Martinez reasoned:
 The police had good reason to believe at the time of the search that quantities of hydriodic acid were inside the garage of the residence in question. After their first search of the red Ford Escort, they also knew that at least one driver had picked up some of that acid.... Significantly, Vizcarra-Martinez acted in a manner that was remarkably similar to the conduct of the driver of the other delivery car....
 [H]is own actions, and the other facts known to the police, strongly suggested that [the defendant] was delivering hydriodic acid and therefore was not an "innocent visitor."
 Id. at 1011, 1012. Based on these facts, Vizcarra-Martinez concluded that the police officers had probable cause to search the defendant's car. Id. at 1012. In light of the nearly identical facts of Vizcarra-Martinez, we are compelled to conclude that officers did have probable cause to arrest Romo as he tried to exit the Garvey house.[3]
 Conclusion
 Based on the totality of the circumstances, the police had more than enough information reasonably to believe that Romo backed his car up the driveway, and opened the trunk so that cocaine could be placed inside. This reasonable belief supported probable cause to arrest Romo for drug trafficking.[4]
 REVERSED and REMANDED.
 
 
 
 *
 The Honorable Jane A. Restani, Judge of the United States Court of International Trade, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Romo argues that the court never found that the garage door was opened while he stood in the driveway. This argument is directly contradicted by Finding of Fact ("FF") No. 32, which states: "The garage was open."
 
 
 [2]
 Romo argues that the court erred in finding that Romo and the unidentified man shook hands. FF No. 33. This finding of fact accords directly with Officer Timothy Day's sworn statement. Romo offers no countervailing evidence to discredit Officer Day's observation. Accordingly, the district court did not clearly err in finding that Romo shook hands with the unidentified man
 
 
 [3]
 Romo argues that Vizcarra-Martinez is distinguishable because, in contrast to the defendant in that case, Romo did not spend several minutes inside of a closed garage. Although Vizcarra-Martinez did mention the suggestive nature of the closed-door activities, 66 F.3d at 1012 n. 2, the finding of probable cause was not based on the fact that the transaction took place behind closed doors. Instead, Vizcarra-Martinez focused on the police's certainty that the residence was a distribution center, and the similarity of conduct between the defendant and the first driver to receive drugs--factors that are present in the this case as well. Id. at 1011-12. Given these crucial similarities, Romo's attempt to distinguish Vizcarra-Martinez must fail
 
 
 [4]
 Our holding is limited to the single issue raised on this appeal--whether the police had probable cause to arrest, and does not preclude the district court from considering any other basis to suppress on grounds not previously ruled on or presented to it