**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

KEVIN DARRELL MILLER,

Defendant-Appellant.

No.     21-50204

D.C. No. 3:17-cr-00042-JM-2

MEMORANDUM[*]

Appeal from the United States District Court
for the Southern District of California
Jeffrey T. Miller, District Judge, Presiding

Submitted February 15, 2023[**]
Pasadena, California

Before:  WALLACE, HURWITZ, and BADE, Circuit Judges.
Concurrence by Judge HURWITZ.

Kevin Darrell Miller was convicted of conspiracy and possession with intent to distribute methamphetamine.  He appeals from the district court's admission of evidence relating to his drug use on the day of a sale of methamphetamine to

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

undercover DEA agents and subsequent destruction of methamphetamine from his residence. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm.

1. We review de novo whether the evidence at issue was inadmissible "other crimes" evidence under Federal Rule of Evidence 404(b). *See United States v. Soliman*, 813 F.2d 277, 278 (9th Cir. 1987). Evidence is not "other crimes" evidence within the meaning of Rule 404(b) if it is inextricably intertwined with the evidence concerning the charged crimes. *United States v. Loftis*, 843 F.3d 1173, 1177 (9th Cir. 2016). Here, the evidence of (1) Miller's drug use with his co-conspirators Batty and Garcia at the time of the drug deal and at Harrison's residence where the deal was to culminate, and (2) the destruction of baggies containing what is believed to be methamphetamine from Miller's residence one week after his arrest, was inextricably intertwined with the evidence supporting the charged crimes. These incidents "permit[ted] the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime; . . . either [regarding] the circumstances under which particular evidence was obtained or the events surrounding the commission of the crime." *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012–13 (9th Cir. 1995). Specifically, the acts at issue occurred either contemporaneously with or shortly after the drug deal; corroborated Batty's testimony; explained Miller's familiarity with Harrison's

2

property; established a relationship between Miller, Batty, and Garcia; and undermined Miller's wrong-place-wrong-time defense. *See, e.g.*, *United States v. Beckman*, 298 F.3d 788, 793–94 (9th Cir. 2002) (admitting evidence of prior drug runs because it established a relationship between the defendants, refuted Beckman's lack of knowledge defense, and explained why Beckman was entrusted with over $1,000,000 in marijuana); *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993) (concluding that prior, uncharged drug transactions were closely linked to events charged in a drug conspiracy and provided context for the government witness's testimony).

We are not persuaded by Miller's argument that his "personal" use and possession of a small amount of methamphetamine does not demonstrate any involvement in "large scale drug trafficking." The cases Miller cites merely stand for the proposition that isolated incidences of personal drug use or possession, without more, do not necessarily establish an intent to manufacture or traffic drugs. *See, e.g.*, *Vizcarra-Martinez*, 66 F.3d at 1013 (concluding that defendant's possession of a small amount of methamphetamine was not inextricably intertwined with the charged crime when the government presented no evidence that the drugs were obtained from a co-conspirator, the defendant had been involved in its manufacture or distribution, or his drug possession led to the search). But, as stated above, the acts here were not separate, isolated incidents.

The government offered "sufficient contextual or substantive connection[s] between the proffered evidence and the alleged crime to justify exempting the evidence from the strictures of Rule 404(b)." *Id.* Miller's alternative characterization of the drug use and possession (i.e., the drugs were intended for personal consumption rather than distribution) goes to the weight of the evidence, not its admissibility.

2.      Alternatively, if this was "other crimes" evidence, we review its admission for an abuse of discretion. *Williams*, 989 F.2d at 1070; *see also United States v. Curtin*, 489 F.3d 935, 943 (9th Cir. 2007) (en banc) (reviewing for abuse of discretion the district court's conclusion "that the probative value of evidence exceeds its potential for unfair prejudice"). Other act evidence is admissible if it: "(1) tends to prove a material point in issue; (2) is not too remote in time; (3) is proven with evidence sufficient to show that the act was committed; and (4) if admitted to prove intent, is similar to the offense charged." *Beckman*, 298 F.3d at 794. Here, the district court did not abuse its discretion in concluding that the evidence was also admissible under Rule 404(b).

First, the evidence pertained to the material point of Miller's knowledge, opportunity, and lack of mistake. *See e.g.*, Fed. R. Evid. 404(b)(2); *United States v. Hegwood*, 977 F.2d 492, 496–97 (9th Cir. 1992) (explaining that evidence of prior drug use, possession, and sale of drugs was admissible Rule 404(b) to prove

4

intent, knowledge, and lack of mistake or accident in prosecution for possession and intent to distribute drugs). Second, the evidence was not too remote in time because the drug use occurred contemporaneously with the drug sale, and the possession and subsequent attempt to destroy the baggies occurred within one week of Miller's arrest. *See, e.g.*, *Beckman*, 298 F.3d at 794 (concluding that the prior act—a drug run—was close in time when it occurred within one month of Beckman's arrest). Third, the drug use and possession were corroborated by testimony and phone logs. *See, e.g.*, *United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002) (concluding that "there was sufficient proof of the prior acts at issue because they were admitted through the testimony of Rivero, whose credibility was left to the jury"). Fourth, the acts (methamphetamine use, possession and destruction) were similar to the charged crimes (methamphetamine possession with intent to distribute).

3.   "If the evidence meets th[e] test under Rule 404(b), the court must then decide whether the probative value is substantially outweighed by the prejudicial impact under Rule 403." *Id.* (citation omitted). Here, the record demonstrates that the district court adequately considered the Rule 403 factors. *See United States v. Daly*, 974 F.2d 1215, 1217 (9th Cir. 1992) (explaining that the Rule 403 analysis need not be explicit, and this court must affirm if the record indicates that the court properly balanced the evidence).

Finally, the district court instructed the jury that it could consider the methamphetamine to determine whether Miller "had the state of mind, intent, or knowledge necessary to commit the" charged crimes, *see, e.g.*, *United States v. Milner*, 962 F.2d 908, 912–13 (9th Cir. 1992) (explaining that evidence of drug use met Rule 403 balancing and was relevant to defendant's state of mind to prove he conspired to distribute drugs), and Miller does not challenge that instruction.

**AFFIRMED.**

USA v. Kevin Miller, No. 21-50204

HURWITZ, Circuit Judge, concurring:

I concur in the majority's conclusion that the district court did not err by admitting evidence of Miller's destruction of methamphetamine in his residence.

I have a slightly different view than the majority about the admission of evidence of Miller's personal drug use. Even assuming that this evidence should not have been admitted, *see United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1013 (9th Cir. 1995), it is clear to me that any error was harmless. The evidence of Miller's involvement in the conspiracy to distribute methamphetamine was overwhelming. *See United States v. Lague*, 971 F.3d 1032, 1041 (9th Cir. 2020) (finding that "overwhelming evidence of guilt" showed harmlessness of purported errors). The testimony about Miller's personal drug use was fleeting—it represents half of one page of the ninety-one-page transcript. And, the jury took only three hours to reach a verdict. *See United States v. Lopez*, 500 F.3d 840, 846 (9th Cir. 2007) (noting that "two and one-half hours" of jury deliberation suggested any error was harmless).